1  Arthur K. Cunningham (SBN 97506)
   Arthur.Cunningham@jacksonlewis.com
2  Kevin M. Erwin (SBN 170186)
   Kevin.Erwin@jacksonlewis.com
3  Semarnpreet Kaur (SBN 328518)
   Semarnpreet.Kaur@jacksonlewis.com
4  JACKSON LEWIS P.C.
   200 Spectrum Center Dr., Suite 500
5  Irvine, CA 92618
   Telephone: (949) 885-1360
6  Facsimile: (949) 885-1380
   Email:
7
   Attorneys for Defendant
8  OSI INDUSTRIES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS MENDOZA and ROSA VALADEZ GARCIA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OSI INDUSTRIES, LLC a Limited Liability Company and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>District Judge:<br>Magistrate Judge:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>Complaint Filed: April 29, 2022<br>Removal Filed: July 8, 2022 |

TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS MICHAEL THOMAS MENDOZA AND ROSA VALADEZ GARCIA, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant OSI INDUSTRIES LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Riverside based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1. On April 29, 2022, Plaintiffs MICHAEL THOMAS MENDOZA and ROSA VALADEZ GARCIA ("Plaintiffs") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Riverside, entitled *MICHAEL THOMAS MENDOZA and ROSA VALADEZ GARCIA, individually, and on behalf of all others similarly situated Plaintiffs, vs. OSI INDUSTRIES,LLC, a Limited Liability Company; and DOES 1 through 10, inclusive, Defendants*, Case No. CVRI2201736, which sets forth the following seven causes of action: (1) Failure to pay minimum and straight time wages; (2) Failure to pay overtime wages; (3) Failure to provide meal periods; (4) Failure to authorize and permit rest periods; (5) Failure to timely pay final wages at termination; (6) Failure to provide accurate itemized wage statements; and (7) Unfair business practices ("Complaint"). As stated in paragraph 23, Plaintiffs brought this action on behalf of themselves and class consisting of "all persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent."

2. Defendant first received Plaintiffs' Summons and Complaint when they were served on June 10, 2022. (Declaration of Kevin M. Erwin ("Erwin Decl.") ¶ 2.) A

true and correct copies of the Summons, Complaint, and other related court documents received by Defendant on June 10, 2022, are attached as **Exhibit "A"** to the Erwin Declaration.

3. On July 7, 2022, Defendant filed and served an Answer to the Complaint in the Riverside Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. (Id. at ¶ 3.) A true and correct copy of Defendant's Answer is attached as **Exhibit "B"** to the Erwin Declaration.

4. As of the date of this Notice of Removal, **Exhibits "A"** through **"B"** to the Erwin Declaration constitute all of the pleadings received or filed by Defendant in this matter. (Id. at ¶ 4.)

## TIMELINESS OF REMOVAL

5. This Notice of Removal has been filed within 30 days after Defendant was first served with a copy of Plaintiffs' Summons and Complaint on June 10, 2022. (Id. at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE IS PROPER

6. This action was filed in the Superior Court in and for the County of Riverside. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. (*See* Erwin Decl. ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 3, 7, 8, 10, and 14.)

///

///

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

7. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332 (d)(5).

9. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiffs are a citizen of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, Defendant is not a State, State official, or other governmental entity.

### A.     The Putative Class Contains More Than 100 Members.

10. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

11. Here, Plaintiffs' Complaint asserts that the class consists of "greater than forty (40) individuals." (Complaint at ¶ 26(a).) Further, Defendant's records identify at least 179 individuals who, like Plaintiffs, have been employed as an hourly, non-exempt employee for Defendant in the State of California from April 29, 2018 to July 5, 2022. In addition, Defendant utilized the services of at least 1,500 temporary workers in California hired through employment staffing agencies between April 29, 2018 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between April 29, 2018 and the present is referred to herein as the "Putative Class Period"). (Declaration of Carrie

Sanchez ("Sanchez Decl.") at ¶¶ 5 and 8.) Defendant fully anticipates that Plaintiff will allege that these temporary workers were non-exempt employees of Defendant. Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied. (Id.)

**B.     None Of the Named Defendants Are Government Entities.**

12.   Defendant is not a State, a State official, or any other governmental entity. (Declaration of Donna Coaxum ("Coaxum Decl.") at ¶ 4.)

**C.     Minimal Diversity Is Satisfied Under CAFA.**

13.   The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14.   Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15.   For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and

citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D. Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S. Dist. LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16. Defendant is informed and believes, as alleged by Plaintiffs in their Complaint, that Plaintiffs were, at the time this action was commenced, and still are, residents and citizens of the State of California. (Complaint at ¶¶ 7 and 8; Sanchez Decl. at ¶ 3.) Accordingly, Plaintiffs are a citizen of the State of California for purposes of removal under CAFA.

17. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019). CAFA expressly states that "for purposes of this section …. an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

18.  With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id*.

19.  At the time Plaintiffs filed their Complaint and presently, Defendant has been a limited liability company organized under the laws of the State of Delaware. (Coaxum Decl. at ¶ 3.) At all relevant times, Defendant's company headquarters – and thus its principal place of business – has been in the State of Illinois where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendant's high-level officers direct, control, and coordinate and control the company's operations and activities. (Id.) Most members of Defendant's executive team maintain their offices in the State of Illinois, while none of Defendant's executive officers reside in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, Defendant is citizen of the States of Delaware and Illinois and is not a citizen of the State of California. (Id.)

20.  Given the above, minimal diversity exists under CAFA because at least two members of the Putative Class (Plaintiffs) were, at the time this action was commenced – and are still believed to be – a citizen of the State of California, while Defendant was – and still are – a citizen of the States of Delaware and Illinois.[1] 28 U.S.C. § 1332(d)(2).

///

///

---

[1]  The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA.  28 U.S.C. § 1441(a); *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

D. **The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**[2]

21. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . . .").

22. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in

---

[2] Defendant denies each and every allegation set forth by Plaintiffs in their Complaint and denies that Plaintiffs or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.

controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969)).

23. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, No. 22-55058, 2022 U.S. App. LEXIS 6932, *1-4 (9th Cir. Mar. 17, 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

24. In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal

jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26. While Plaintiffs do not allege a specific amount in damages, their Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such, Plaintiffs are claiming that the monetary damages and restitution they are seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[3] which is confirmed by the fact that they designated their case as "Unlimited (Amount demanded exceeds $25,000)" on their Civil Case Cover Sheet. (Erwin Decl. ¶ 2, **Exhibit "A"** at Civil Case Cover Sheet.) Thus, based on the allegations in the Complaint, which contend that Plaintiffs' claims are "typical of all [Putative Class Members]," it is plausible that Plaintiffs are seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over $4,475,000 in controversy related to 179 employees, and $37,500,000 in controversy related to 1,500 temporary workers – **resulting in over of $41,975,000 in controversy.** (Complaint at ¶ 26(b); Sanchez Decl. at ¶¶ 4-8.[4]) *See Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

27. In the alternative, and without admitting that Plaintiffs could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[5] also conservatively places an aggregate amount in controversy exceeding **$7,300,628.00,** exclusive of interest and costs, *based only on Defendant's approximate 179 hourly, non-exempt employees* during the Putative Class Period as follows:

a. **Failure to Pay Minimum and Straight Time Wages (First Cause of Action)**: Plaintiffs contend they were scheduled "to work at least five days in a workweek

---

[3]  *See* California Code of Civil Procedure §§ 86(a) and 88.
[4]  Although the Putative Class Period spans from April 29, 2018 to the present, all calculations used in this Notice of Removal are based on Defendant's payroll data for Putative Class Members during the period of April 29, 2018 to July 5, 2022. (Sanchez Decl. at ¶¶ 4-8.)
[5]  *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

and at least eight hours per day, but Plaintiffs regularly worked more than eight hours in a workday and more than forty (40) hours in a workweek," and based on the allegations in the Complaint, which contend that Plaintiffs' claims are "typical of all [Putative Class Members]," it is plausible that Plaintiffs are contending that all Putative Class Members worked at least five days in a workweek. (Complaint at ¶¶ 14 and 26(b).) Plaintiffs seeks to recover "all unpaid minimum and straight time wages, interests, and reasonable attorney's fees," and "liquidated damages" because allegedly "[t]hroughout the statutory period, Defendant[] maintained policy and practice of not paying Plaintiffs and the [Putative Class Members] for all hours worked, including minimum, straight time, and overtime wages," and Defendant failed to relieve employees of all duties and employer control during meal and rest periods. (Id at ¶¶ 15, 16, 17, 18, 32, 37, 38, and 39.) For instance, Plaintiffs claim that Defendant "continued to assert control over Plaintiffs and the [Putative Class Members] by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory" meal periods and rest periods. (Id. at ¶¶ 17 and 18.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at least five hours of minimum wage per week for all Defendant's hourly, non-exempt employees during the Putative Class Period, which would place over **$770,000.00**[6] in controversy in connection with their minimum wage claim ($11.00[7] minimum hourly wage rate x 5 hour per week x 14,000[8] workweeks plus an equal amount in liquidated damages). (Sanchez Decl. at ¶¶ 4-8.)

---

[6]     This does not account for liquidated damages that Plaintiffs may attempt to recover pursuant to Labor Code section 1194.2.

[7]     For purposes of calculating potential minimum wage damages in this Notice of Removal, Defendant conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour). *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

[8]     For purposes of calculating all amounts in controversy in this removal, Defendant conservatively assumed, based on a review of internal records, that the Putative Class

  **b.**   *<u>Failure to Pay Overtime Wages (Second Cause of Action)</u>:* Plaintiffs contend that "[a]t all times relevant hereto, Plaintiffs and the [Putative Class Members] have worked more than eight hours in a workday and/or more than forty (40) hours in a workweek, as employees of Defendants." (Complaint at ¶¶ 43 and 44.) Given these purported violations, Plaintiffs claim they and Putative Class Members are entitled to recover overtime wages. (Id. at 40-48.) Under Labor Code section 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee. Conservatively estimating that Plaintiffs will attempt to recover five hours of overtime wages per week for all Putative Class Members, and that the Defendant's employees were earning $17.32[9] per hour, which would place over **$1,818,600.00** in controversy in connection with their overtime wage claim ($25.98 overtime rate [$17.32 x 1.5] x 5 hours x 14,000 workweeks). (Sanchez Decl. at ¶¶ 5-6.)

  **c.**   *<u>Failure to Provide Meal Periods (Third Cause of Action)</u>:* Plaintiffs contend they were scheduled "to work at least five days in a workweek and at least eight hours per day, but Plaintiffs regularly worked more than eight hours in a workday and more than forty (40) hours in a workweek," and based on the allegations in the Complaint, which contend that Plaintiffs' claims are "typical of all [Putative Class Members]," it is plausible that Plaintiffs are contending that all Putative Class Members worked at least five days in a workweek. (Complaint at ¶¶ 14 and 26(b).) Plaintiffs further allege that Defendant's "policy and practice was not to provide meal periods to Plaintiffs and the [Putative Class Members] in compliance with California law," because Defendant "continued to assert control over Plaintiffs and the [Putative Class Members]

---

consisted of at least 179 individuals who collectively worked at least 14,000 workweeks during the Putative Class Period. (Sanchez Decl. at ¶¶ 4-8.) At this time, Defendant is not including the damages related to at least 1,500 temporary workers that Defendant employed during the Putative Class Period.

[9]   All amounts in controversy have been calculated using the $17.32 combined weighted average hourly wage rate paid to Putative Class Members during the Putative Class Period. (Sanchez Decl. at ¶ 6.)

by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or by denying Plaintiffs and the [Putative Class Members] permission to take a meal period," and Defendant "also failed to permit Plaintiffs to take a second meal period when Plaintiffs worked at least ten hours of work in a workday." (Id. at ¶¶17 and 51.) Given these purported violations, Plaintiffs claim they and the Putative Class Members "are entitled to be paid one hour of additional wages for each workday he or she was not provided with all required meal period(s), plus interest thereon." (Id. at ¶52.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover meal period premiums based on a 100% violation rate for all Putative Class Members, which would place **$1,212,400.00** in controversy in connection with their meal period claim ($17.32 x 5 meal period penalties per week x 14,000 workweeks). (Sanchez Decl. at ¶¶ 5-6.)

    d. <u>*Failure to Authorize and Permit Rest Periods (Fourth Cause of Action)*</u>: Similar to their third cause of action, Plaintiffs contend that Defendant "regularly required Plaintiffs and the [Putative Class Members] to work in excess of four consecutive hours a day without Defendant[] authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiffs and the [Putative Class Members] for rest periods that were not authorized or permitted." (Complaint at ¶¶18 and 54.) Plaintiffs further allege that Defendant's "policy and practice was to not authorize and permit Plaintiffs and the [Putative Class Members] to take rest periods in compliance with California law," because Defendant "continued to assert control over Plaintiffs and the [Putative Class Members] by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiffs and the [Putative Class Members] permission to take a rest period." (Id. at ¶¶18 and 55.) Given these purported violations, Plaintiffs claim they and the Putative Class Members "are entitled to be paid one hour premium wages rate for

each workday he or she was not provided with all required rest break(s), plus interest thereon." (Id. at ¶56.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover rest period premiums based on a 100% violation rate for all Putative Class Members, which would place **$1,212,400.00** in controversy in connection with their rest period claim ($17.32 x 5 rest period penalties per week x 14,000 workweeks). (Sanchez Decl. at ¶¶ 5-6.)

    e.   **_Failure to Timely Pay Final Wages at Termination (Fifth Cause of Action)_**_:_ For Plaintiffs' fifth cause of action, Plaintiffs assert that Defendant "failed, and continue to fail to pay terminated [Putative Class Members], without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ. (Complaint at ¶59.) Plaintiffs further allege "on information and belief, Defendants failure to timely pay Plaintiffs' final wages when their employment terminated was not a single, isolated incident, but was instead consistent with Defendants' policy and practice that applied to Plaintiffs and the [Putative Class Members]." (Id. at ¶19.) During the applicable statute of limitations period (April 29, 2019 to present), at least 118 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Sanchez Decl. at ¶¶ 5-6.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs have placed over **$490,502.40** in controversy in connection with their claims for waiting time penalties claim (118 Putative Class Members who have separated from their employment with Defendant x $17.32 average hourly rate x 8 hours x 30 days).[10]  (Id.)

    f.   **_Failure to Provide and Maintain Accurate and Compliant Wage Records (Sixth Cause of Action)_**_:_ For Plaintiffs' sixth cause of action, Plaintiffs assert that

---

[10]    Based on a plausible reading of the Complaint, Plaintiffs are seeking to recover waiting time penalties for any Putative Class Member who was subjected to any of the alleged violations set forth in the Complaint's first through fourth causes of action and separated from their employment with Defendant during the applicable statute of limitations period.

Defendant failed to provide Putative Class Members "with accurate, itemized wage statements showing all applicable hourly rates, all overtime hourly rates, and all gross and net wages earned (including correct hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law)." (Complaint at ¶20.) Plaintiffs further allege Defendant's "deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiffs and the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned." (Id. at ¶66.) Given these purported violations, Plaintiffs claim they and the Putative Class Members "are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee." (Id. at ¶70.) During the one-year statute of limitations period mandated under Labor Code section 226 (*i.e.*, April 29, 2021 to July 5, 2022), at least 68 Putative Class Members received weekly wage statements. (Sanchez Decl. at ¶ 7.)  Thus, based on the allegations in the Complaint, aassuming that each of the approximately 68 Employees received 50 noncompliant wage statements during the applicable timeframe, this claim alone places in controversy at least **$336,600.00** ([$50 x 1 initial violation x 68 employees] + [$100 x 49 subsequent violations x 68 employees]). (Id.) *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.,* No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this

many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

28. Plaintiffs also seek an unspecified amount of attorneys' fees in connection with their putative class and collective claims, which the Court should consider and include in the amount in controversy. (Complaint at pgs. 20-23, Prayer for Relief.) *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, *supra*, 2018 U.S. Dist. LEXIS 78510 at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Solorzano*, *supra*, 2021 U.S. Dist. LEXIS 129517 at *3-4 (demonstrating courts regularly adopting a $300 per hour rate for attorneys' fees in employment actions).

29. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

30. The Court should therefore consider attorneys' fees of at least **$1,460,125.60,** a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiffs' claims, it is plausible that the aggregate amount in controversy in connection with Plaintiffs' putative class claims (over **$7,300,628.00**[11]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

---

[11] This amount does include potential damages for Plaintiffs' seventh cause of action (Violation of California Business & Professions Code) and the damages related to at least

**NOTICE TO ALL PARTIES AND STATE COURT**

32. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiffs' counsel and filed with the Clerk of the Riverside County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

**CONCLUSION**

33. Based on the foregoing, Defendant hereby removes the above-captioned action from the Riverside County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated: July 11, 2022

JACKSON LEWIS P.C.

By: /s/ Kevin. M. Erwin
Arthur K. Cunningham
Kevin. M. Erwin
Semarnpreet Kaur

Attorneys for Defendant
OSI INDUSTRIES, LLC

4894-4514-1799, v. 1

---

1,500 temporary workers who performed work that Defendant's California facility, whom Plaintiffs will claim were non-exempt employees of Defendant, during the Putative Class Period, which would further increase the amount in controversy in connection with Plaintiffs' putative class claims.